## UNITED STATES DISTRICT COURT
## SOUTHERN DISTRICT OF FLORIDA

Case No.: 1:20-cv-25178-KMM

RAUL JIMENEZ,

      Plaintiff,

v.

KILOLO KIJAKAZI,
*Acting Commissioner of the*
*Social Security Administration*,[1]

      Defendant.

_____/

## REPORT AND RECOMMENDATION

**THIS MATTER** is before the Court on Plaintiff Raul Jimenez's Motion for Summary Judgment (ECF No. 24) and Defendant Kilolo Kijakazi's, Commissioner of the Social Security Administration ("Commissioner"), Motion for Summary Judgment with Supporting Memorandum of Law and Response in Opposition to Plaintiff's Motion for Summary Judgment (ECF No. 29). Plaintiff filed a Reply to Defendant's Response to Plaintiff's Motion for Summary Judgment (ECF No. 33).[2] The undersigned has fully considered the Motions, the record, and is otherwise duly advised in the matter, and hereby **RECOMMENDS** that Plaintiff's Motion for Summary Judgment be **GRANTED**, and Defendant's Motion for Summary Judgment be **DENIED**.

---

[1] Plaintiff initiated this suit against then-Acting Commissioner Andrew Saul. Kilolo Kijakazi replaced Andrew Saul as the Acting Commissioner of Social Security on July 9, 2021. Pursuant to Federal Rule of Civil Procedure 25(d), "[a]n action does not abate when a public officer who is a party in an official capacity . . . otherwise ceases to hold office while the action is pending. The officer's successor is automatically substituted as a party. Later proceedings should be in the substituted party's name, but any misnomer not affecting the parties' substantial rights must be disregarded."

[2] The Honorable K. Michael Moore, United States District Judge, referred the Motions to the undersigned Magistrate Judge for a Report and Recommendation (ECF No. 2).

## I.      PROCEDURAL BACKGROUND

This case involves an application for Social Security disability insurance benefits under the Social Security Act ("Act"), 42 U.S.C. § 401, *et seq*.  On August 9, 2018, Plaintiff applied for Social Security disability insurance benefits, alleging bipolar disorder, depression, and anxiety. (ECF No. 24 at 1); (R. 216–17, 276).[3]   Plaintiff alleges the disability onset date to be April 27, 2018.  (R. 73).

Plaintiff's claim was initially denied on November 16, 2018.   (R. 15).   Upon reconsideration, Plaintiff's claim was again denied.   Thereafter, Plaintiff filed a request for a hearing before an Administrative Law Judge ("ALJ").  A hearing took place on January 9, 2020, before ALJ Lornette Reynolds.   The ALJ found that Plaintiff retained the residual functional capacity ("RFC") to perform a full range of work at all exertional levels with non-exertional limitations.[4]  (R. 20).  However, the ALJ found Plaintiff unable to perform his past relevant work as a store manager and employment training specialist.   Instead, the ALJ, through the testimony of the vocational expert ("VE"), Daniel L. Simone, found that Plaintiff's age, education, work experience, and RFC qualify him for "jobs that exist in significant numbers in the national economy."  (R. 25).  Accordingly, the ALJ found Plaintiff not disabled.  (*Id.*).  Plaintiff sought review from the Appeals Council, which subsequently denied his request for review on October 28, 2020.  (R. 5).

---

[3] Citations to the Certified Administrative Record (ECF No. 20) are indicated by "R" followed by the Commissioner's Bates numbering stamp (the bold font numbers located in the bottom right-hand corner of each page).

[4] Limitations or restrictions which affect a claimant's ability to meet the demands of jobs, other than strength demands, are considered non-exertional limitations.  20 C.F.R. § 416.969a(a).  Examples of non-exertional limitations include difficulty functioning due to nervousness, anxiety, or depression or difficulty performing manipulative or postural functions of some work such as reaching, handling, stooping, climbing, crawling, crouching.  *See id.* at § 416.969a(c)(vi).

Under 42 U.S.C. § 405(g), Plaintiff exhausted all forms of administrative review.  Plaintiff

and Defendant both filed Motions for Summary Judgment, which are now ripe for review.

## II.    THE RECORD

### a.  Summary of the Administrative Law Judge's Decision

After reviewing the record and conducting a hearing, the ALJ determined that Plaintiff was

not disabled within the meaning of the Act.  Following a hearing in which testimony was taken

and evidence presented, the ALJ issued a written decision.  As part of the analysis, the ALJ

conducted the required five-step sequential evaluation.

In step one, the ALJ found that Plaintiff had not engaged in substantial gainful activity

since his application date.  (R. 17–18).  In step two, the ALJ found that Plaintiff had severe

impairments of bipolar II disorder and generalized anxiety disorder.  (R. 18).  In step three, the

ALJ found that Plaintiff "does not have an impairment or combination of impairments that meets

or medically equals the severity of one of the listed impairments in 20 C.F.R. Part 404, Subpart P,

Appendix 1 (20 C.F.R. § 404.1520(d), 404.1525 and 404.1526)."  (R. 19).

In step four, the ALJ evaluated Plaintiff's RFC:

[Plaintiff] has the residual functional capacity to perform a full range of work at all
exertional levels but with the following non-exertional limitations: the claimant
should never work climbing ladders, ropes or scaffolds; work at unprotected heights
or operate dangerous machinery.  Mentally, the claimant is able to understand,
remember and carry out simple and detailed but uninvolved written or oral tasks
and instructions (that is Reasoning Level 1-3).  He is able to sustain attention and
concentration for two-hour periods at a time and for eight hours in the workday on
simple and detailed but uninvolved written or oral tasks and instructions.  He can
use judgment in making work decisions related to simple and detailed but
uninvolved written or oral tasks and instructions.  He can respond appropriately in
situations requiring the precise attainment of set limits, tolerances or standards.  He
is able to respond appropriately to supervision but is limited to occasional
interaction with co-workers and the general public on routine matters.  He can
maintain regular attendance and be punctual within customary tolerances.
Additionally, the claimant can perform activities within a schedule.

3

(R. 19).  In reaching the above RFC finding, the ALJ considered Plaintiff's medical records.  The ALJ found that Plaintiff's allegations of disabling symptoms "are not entirely consistent with the medical evidence and other evidence of record."  (R. 22); (ECF No. 24 at 2).  The ALJ also found that the medical evidence from Plaintiff's treating physicians, Sumir A. Sabbag, M.D. and Anthony M. Castro, M.D., and the opinion of the consultative examiner, Mayra Miro Psy.D., were not persuasive.  (R. 23–24).  The ALJ found the opinion of treating psychiatrist, Teresa Rivas-Torres, M.D., persuasive as to diagnoses and medication, but otherwise unpersuasive.  (R. 23).  The ALJ's findings relied on the non-examining State Agency psychological consultants, finding their opinions persuasive.  (R. 24).  The ALJ also found that Plaintiff could not return to his past relevant work as a store manager and employment training specialist.  (R. 20).

In step five, the ALJ considered Plaintiff's age, education, work experience, and RFC to determine that Plaintiff can perform a significant number of jobs in the national economy, including a hand packager and kitchen helper, which are both unskilled and reasoning level two jobs.  (R. 25).  Finding that jobs accommodating Plaintiff's impairments exist, the ALJ concluded at this step that Plaintiff was not disabled.  (*Id.*).

## III.    STANDARD OF REVIEW

### a.  Legal Principles

After an ALJ issues a decision and the claimant exhausts all tools of administrative review, the claimant may seek review of the decision by commencing a civil action in federal court.  The court is tasked with only deciding whether the ALJ's decision was supported by substantial evidence and whether the ALJ applied the correct legal standards.  *See* 42 U.S.C. § 405(g); *Davis v. Kijakazi*, 2022 WL 1215634, at *1 (N.D. Ala. Apr. 25, 2022) (citing *Noble v. Comm'r of Soc. Sec.*, 963 F.3d 1317, 1323 (11th Cir. 2020)).

### b. Regulatory Framework

The Social Security Administration ("SSA") formulated a framework of detailed regulations that are used in the SSA's review process. This framework begins by determining whether a claimant is disabled. A claimant must be "disabled" to be eligible for Social Security benefits. 42 U.S.C. § 1382. The claimant must prove he or she is disabled within the meaning of 42 U.S.C. § 423(d)(1)(A). The Act defines a disability as the "inability to engage in any substantial activity by reason of any medically determinable physical or mental impairment which can be expected to result in death or which has lasted or can be expected to last for a continuous period of not less than 12 months." 42 U.S.C. § 423(d)(1)(A). A physical or mental impairment is "an impairment that results from anatomical, physiological, or psychological abnormalities which are demonstrable by medically acceptable clinical and laboratory diagnostic techniques." 42 U.S.C. § 423(d)(3).

The Code of Federal Regulations outlines a five-step sequential evaluation process for deciding whether a claimant is disabled. In the first step, the ALJ must determine whether the claimant is currently engaged in substantial gainful activity. 20 C.F.R. § 404.1520(a)(4)(i). If a claimant is engaged in any substantial gainful activity, she will be found not disabled.

In the second step, the ALJ must then determine whether she has a severe impairment or a combination of impairments. 20 C.F.R. §§ 404.1520(a)(4)(ii). If the claimant's impairment or combination of impairments does not significantly limit her physical or mental ability to do basic work activities, the ALJ will find that the impairment is not severe, and the claimant will not be found disabled. 20 C.F.R. § 1520(c). If the claimant does have a severe impairment or combination of impairments, the ALJ goes on to step three. *Mabry v. Saul*, 2020 WL 4428749, at *2 (N.D. Ala. July 31, 2020).

In the third step, the ALJ must determine whether the impairment meets or equals the severity of a specified impairment in the Listing of Impairments.   20 C.F.R. Pt. 404, Subpt. P. App. 1.   Step four consists of a two-prong analysis, in which the ALJ assesses the following: (1) the claimant's residual functional capacity and (2) the claimant's ability to perform her past relevant work.   20 C.F.R. §§ 404.1520(a)(4)(iv), 416.920(a)(4)(iv).   At this step, the ALJ will consider the claimant's RFC and compare it with the physical and mental demands of her past relevant work.   20 C.F.R.   §§   1520(a)(4)(iv), 1520(f).   If the claimant cannot prove that her impairment meets or equals one of the impairments listed in Appendix 1, she must prove that her impairment prevents her from performing his past relevant work.   If the claimant can still perform his past relevant work, then she will not be found disabled.   *Id.*

In step five, the burden shifts to the SSA to show the existence of other jobs in the national economy that the claimant can perform.   *Washington v. Comm'r of Soc. Sec.*, 906 F.3d 1353, 1359 (11th Cir. 2018).   If met, the "burden shifts back to the claimant to prove she is unable to perform the jobs suggested by the [SSA]."   *Id.*   The ALJ considers the claimant's RFC, age, education, and work experience in determining whether the claimant is capable of adjusting to other work.   If the claimant can make an adjustment to other work that exists in the national economy, then she is not disabled.   If not, the claimant is considered disabled.   20 C.F.R. §§ 404.1520(g), 416.920(g).   In determining whether the Commissioner has met this burden, the ALJ must develop a full and fair record regarding the vocational opportunities available to the claimant.   *Allen v. Sullivan*, 880 F.2d 1200, 1201 (11th Cir. 1989).

In 2017, The Social Security Administration revised its regulations regarding the consideration of medical evidence, with those revisions applicable to all claims filed after March 27, 2017.   *See* 82 Fed. Reg. 5844-01, 2017 WL 168819 (Jan. 18, 2017).

The revised regulations provide that the SSA will consider medical opinions or prior administrative medical findings using certain factors. 20 C.F.R. § 404.1520c(a). The factors are (1) supportability, (2) consistency, (3) relationship with the claimant, (4) specialization, and (5) other factors, such as familiarity with the other evidence in the claim or an understanding of the program's policies and evidentiary requirements. 20 C.F.R. § 404.1520c(c). The most important of these factors are supportability and consistency. 20 C.F.R. § 404.1520c(a). For example, the more relevant the objective medical evidence and supporting explanation provide by a medical source to support his or her medical opinion, the more persuasive the medical opinion will be. 20 C.F.R. § 404.1520c(c)(1).

For supportability, the revised rules provide: "The more relevant the objective medical evidence and supporting explanations presented by a medical source are to support his or her medical opinion(s) or prior administrative medical finding(s), the more persuasive the medical opinions or prior administrative medical finding(s) will be." 20 C.F.R. §§ 404.1520c(c)(1); 416.920c(c)(1).

For consistency, the revised rules provide: "The more consistent a medical opinion(s) or prior administrative medical finding(s) is with the evidence from other medical sources and nonmedical sources in the claim, the more persuasive the medical opinion(s) or prior administrative medical finding(s) will be." 20 C.F.R. §§ 404.1520c(c)(2), 416.920c(c)(2).

## IV.  ANALYSIS

Plaintiff argues that the ALJ's decision should be reversed, or that the matter should be remanded for further administrative proceedings because (1) the assessment of Plaintiff's mental RFC limitations is unsupported by substantial evidence; (2) the ALJ's reasoning for not crediting Plaintiff's testimony is not supported by substantial evidence; and (3) Defendant failed to sustain

her burden of establishing that there is other work in the national economy that Plaintiff can perform.  For the reasons below, remand is appropriate.

### a. Substantial Evidence Does Not Support the ALJ's Assessment of Plaintiff's Mental RFC Limitations

Plaintiff argues that the ALJ's mental RFC assessment is not supported by substantial evidence because it fails to account for the limitations found by all medical providers of record who opined on Plaintiff's mental limitations, including treating, consulting, or State Agency non-examining psychologists.  (ECF No. 24 at 11).

"The residual functional capacity is an assessment, based upon all of the relevant evidence, of a claimant's remaining ability to do work despite his impairments." *Lewis v. Callahan*, 125 F.3d 1436, 1440 (11th Cir. 1997) (citing 20 C.F.R. § 404.1545(a)).  Along with age, education and work experience, the claimant's residual functional capacity is considered in determining whether the claimant can work.  *Id.*  (citing 20 C.F.R. § 404.1520(f)).  "[T]he task of determining a claimant's residual functional capacity and ability to work is within the province of the ALJ, not of doctors" and "[t]he ALJ makes this determination by considering the claimant's ability to meet the physical, mental, sensory, and other requirements of work." *Robinson v. Astrue*, 365 F. App'x 993, 999 (11th Cir. 2010) (citing 20 C.F.R. § 416.945(a)(4)).

"[I]n reviewing the ALJ's decision, a court is not to reweigh the evidence or decide the facts anew." *Lombana v. Saul*, 2020 WL 5633684, at *5 (citing *Winschel v. Comm'r, Soc. Sec.*, 631 F.3d 1176, 1178 (11th Cir. 2011)) (internal quotation marks omitted).  While the Court must not reweigh the evidence, the decision must be supported by substantial evidence such that a reasonable person would accept it as adequate to support the ALJ's conclusion.  *Crawford v. Comm'r*, 363 F.3d 1155, 1158 (11th Cir. 2004).  Substantial evidence is more than a scintilla—the

evidence must do more than merely create a suspicion of the existence of a fact and must include such relevant evidence as a reasonable person would accept as adequate to support the conclusion. *Foote v. Chater*, 67 F.3d 1553, 1560 (11th Cir. 1995) (citing *Walden v. Schweiker*, 672 F.2d 835, 838 (11th Cir. 1982)).

### i.   The ALJ's Mental Limitation Finding

Plaintiff first argues that the ALJ's finding that Plaintiff has no mental limitations other than a limitation to "occasional interaction with co-workers and the general public on routine matters" is not supported by substantial evidence.  In response, Defendant contends that the ALJ's finding is appropriate because the ALJ properly limited the complexity of the tasks Plaintiff could understand, remember, carry out, attend to, and concentrate on.

Relying solely on *Samuels v. Acting Comm'r of Soc. Sec.*, 959 F.3d 1042 (11th Cir. 2020), Plaintiff argues that the ALJ's decision did not appropriately account for Plaintiff's mental limitations stemming from his bipolar II disorder.  In *Samuels*, the ALJ did not account for the effects of the plaintiff's bipolar disorder on his ability to work, including difficulties with completing a normal workweek or related problems that would result in unexcused absences or time spent off-task.  *Id.* at 1047.  Thus, the ALJ's decision to only include limitations to simple work and occasional public interaction was not sufficient to encompass the limitations stemming from the plaintiff's bipolar disorder.  *Id.*

Plaintiff contends that "[t]he ALJ [here] made the same error."  (ECF No. 24 at 12).  Such an argument is not accurate because the ALJ's decision in this case accounted for the medical evidence of record and other evidence, including Dr. Miro's evaluation which noted Plaintiff as "fully cooperative" and presenting "fair social judgment."  (R. 586–90).  The ALJ also noted that

Plaintiff was polite and that he interacted appropriately with the ALJ and the hearing office personnel at the hearing before the ALJ.  (R. 19).

Plaintiff's argument also fails to proffer facts specific to Plaintiff that would demonstrate what limitations stem from Plaintiff's bipolar disorder that would necessitate any additional limitations that the ALJ's decision did not consider.  It is not enough that Plaintiff suffers from an impairment.  Plaintiff must produce evidence in support of the claim that additional limitations stem from Plaintiff's bipolar disorder.  *Moore v. Barnhart*, 405 F.3d 1208, 1213 n.6 (11th Cir. 2005) ("[claimant] must produce evidence in support of a claim").  As Defendant noted from the ALJ's findings, Plaintiff's mental status examinations demonstrated that "he maintained good functioning in the areas of attention and concentration, memory, thought process, behavior, and insight and judgment."  (ECF No. 29 at 6); *see* (R. 371, 451, 594, 596, 598, 600, 602, 604, 617, 619, 621, 623, 625).  Thus, the ALJ supported the finding that Plaintiff has at a minimum, a "moderate limitation" in interacting with others.  This conclusion is supported by substantial evidence, and accordingly, the undersigned recommends affirming the ALJ's finding regarding the sole mental limitation.

However, as noted below, the ALJ's decision is deficient in other respects, especially as it relates to considering medical evidence, Plaintiff's testimony, and explaining why the ALJ's decision reached the conclusions as to Plaintiff's RFC and limitations regarding interaction with supervisors.

### ii.   The ALJ's Consideration of Dr. Castro's Opinion

Plaintiff argues that the ALJ's finding that Dr. Anthony M. Castro's opinion is not persuasive is not based on substantial evidence because Dr. Castro provided ample documentation and detail as to Plaintiff's impairments.  Defendant contends that Dr. Castro's opinion is not a

medical opinion; rather, it is a "statement on an issue reserved to the Commissioner." (ECF No. 29 at 7). I find Defendant's argument unconvincing.

According to the SSA regulations, the ALJ should not defer or give controlling weight to any medical opinions. 20 C.F.R. § 404.1520. Instead, the ALJ shall consider the persuasiveness of any medical opinion based on five factors: (1) Supportability; (2) Consistency; (3) Relationship with the claimant; (4) Specialization; and (5) other factors. 20 C.F.R. § 404.1520(c). The first two factors, supportability and consistency, are the most important in the analysis. 20 C.F.R. § 404.1520(b)(2)–(c). As such, the ALJ must explain how he considered these two factors when determining the persuasiveness of a medical source's medical opinion. *Id.* The ALJ may, but is not required to, also explain how he considered the remaining factors. *Id.*

In support, the ALJ referenced an April 1, 2019 letter from Dr. Castro to Plaintiff's previous employer on Plaintiff's behalf. In that letter, Dr. Castro opined that Plaintiff continued to display "high levels of anxiety and extended periods of low mood," and remained at an "increased risk for experiencing sudden moments of irritability, panic attacks, extreme fatigue, poor concentration, and emotional sensitivity." (R. 611). Ultimately, Dr. Castro recommended against Plaintiff returning to work until "greater levels of personal functioning are consistently achieved." (*Id.*). However, the ALJ found Dr. Castro's opinion unpersuasive because he "neither specifically identified a medically determinable impairment nor provided a function-by-function assessment of the claimant's limitations, as contemplated by the regulations for opinion evidence." (R. 23).

Plaintiff argues that the ALJ selectively cited evidence from the record and failed to consider Dr. Castro's letter in conjunction with his other progress notes. *Schink v. Comm'r of Soc. Sec.*, 935 F.3d 1245, 1262 (11th Cir. 2019) (holding that the ALJ should have interpreted treating

physicians' answers to questionnaires in light of their treatment notes, which fleshed out the physicians' conclusions and supported the questionnaires).

Specifically, Plaintiff contends that the ALJ erred because Dr. Castro's progress notes repeatedly diagnosed Plaintiff with bipolar II disorder and generalized anxiety disorder.  (R. 594, 597, 599, 601, 603, 605, 617, 619, 621, 623, 626).  Plaintiff also notes that the ALJ's decision mirrors Dr. Castro's opinion because the severe impairments recognized in the ALJ's decision are the *same* impairments as those diagnosed in Dr. Castro's progress notes: "bipolar II and generalized anxiety disorder."  (R. 18); *see* (R. 617).  In fact, a brief examination of Plaintiff's treatment notes from March 26 (the day that is mentioned in Dr. Castro's letter) clearly indicates Dr. Castro's diagnoses as bipolar II disorder, major depressive episode, and anxiety with limited-symptom attacks.  (R. 619).

Defendant argues that Plaintiff assumes that Dr. Castro's opinion constitutes a "medical opinion" and is not just a collection of statements.  (ECF No. 29 at 7).  Defendant contends that whether Dr. Castro's letter mentions a medically determinable impairment is of no consequence because his letter is not a medical opinion requiring evaluation.

The regulations provide that a medical opinion is defined as follows:

> [A] statement from a medical source about what you can still do despite your impairment(s) and whether you have one or more impairment-related limitations or restrictions in the following abilities: (For claims filed (see § 404.614) before March 27, 2017, see § 404.1527(a) for the definition of medical opinion.)

20 C.F.R. § 404.1513(a)(2).  Neither the ALJ's decision nor Defendant's conclusions comport with the regulations.  Defendant repeatedly asserts that Dr. Castro's letter does not constitute a medical opinion without providing specific details as to why it is not a medical opinion.  Defendant merely proffers that "Dr. Castro appears to be saying that Plaintiff simply cannot perform any professional

responsibilities, which is essentially [a] statement that Plaintiff is unable to work, and not a medical opinion." (ECF No. 29. at 8). It is unclear why Defendant insists that a medical opinion cannot contemporaneously indicate that Plaintiff is unable to work while also providing a medical opinion as to the reason why Plaintiff is unable to work. Defendant provides no case law to support such a contention.

Dr. Castro's letter clearly satisfies the regulations by addressing Plaintiff's ability to complete a normal workweek and provides the requisite description. Under 20 C.F.R. § 404.1513(a)(2)(ii), a medical opinion can fall under a category of evidence implicating a claimant's ability to perform mental demands of work activities, "such as understanding; remembering; maintaining concentration, persistence, or pace; carrying out instructions; or responding appropriately to supervision, co-workers, or work pressures in a work setting."

Dr. Castro's opinion states, in part:

> . . .Mr. Jimenez has been under my care since May 2018. Our most recent treatment visit was held on March 26th of this year. He continues to display high levels of anxiety and extended periods of low mood. In his current state, he remains at an increased risk for experiencing sudden moments of irritability, panic attacks, extreme fatigue, poor concentration, and emotional sensitivity. These symptoms directly interfere with his day-to-day responsibilities, from maintaining his daily hygiene to more complex activities such as managing personal finances. Professional activities require greater physical, emotional, and cognitive resources. Prematurely returning to work can also jeopardize Mr. Jimenez's progress and unnecessarily prolong his recovery. For these reasons, I do not recommend that Mr. Jimenez return to his professional duties until greater levels of personal functioning are consistently achieved.

(R. 611). Considering the regulations and Dr. Castro's evaluation, it is evident that Dr. Castro's statements fits squarely into the definition of a medical opinion because it discusses Plaintiff's limitations as a result of his "high levels of anxiety and extended periods of low mood," which is

13

directly attributed to his severe impairments.  Plaintiff's symptoms clearly inhibit his ability to perform the mental demands of work activities as contemplated by the regulations.

The ALJ also found that Dr. Castro did not provide a functional assessment "as contemplated by the regulations for opinion evidence." (R. 20).  However, the ALJ fails to cite what specific regulations or case law require a function-by-function assessment of Plaintiff's limitations to constitute opinion evidence.  Such an assessment is not required for Dr. Castro's opinion to be considered a medical opinion.  *See* 20 C.F.R.§ 404.1513.

Considering the aforementioned issues and the lack of substantial evidence supporting the ALJ's decision to find Dr. Castro's opinion not persuasive, I recommend a remand and reconsideration of Dr. Castro's opinion in accordance with the regulations.

### iii.  The ALJ's Consideration of Dr. Miro's Opinion

Plaintiff also argues that the ALJ selectively cited medical evidence from the record in finding Consultative Evaluator Dr. Mayra M. Miro's report not persuasive.  Defendant avers that substantial evidence supports the ALJ's findings that Dr. Miro's statements were not supported by her own examination findings and inconsistent with the overall medical evidence of record.

In support of the finding that Dr. Miro's opinion is not persuasive, the ALJ referenced Dr. Miro's mental status examination findings, which showed "normal thought processes and thought content," in addition to Plaintiff appearing "fully oriented with grossly intact memory." (R. 24).  The ALJ also cited an excerpt of Dr. Miro's examination which indicated "Plaintiff was fully cooperative with good effort on cognitive tasks." (*Id.*).  However, these excerpts from Dr. Miro's evaluation do not constitute substantial evidence to support the ALJ's finding.

The ALJ did not cite to the remainder of Dr. Miro's opinion which described the negative effects of Plaintiff's impairments, consistent with Plaintiff's medical history.  For example, Dr.

Miro observed that Plaintiff's "affect was reduced in range" and his "mood was dysphoric."  (R. 588).  Dr. Miro acknowledged Plaintiff's symptoms, which included "loss of interest, anhedonia, sadness, frequent crying insomnia, lack of energy, fatigue, poor concentration, loss of appetite and marked social isolation."  (*Id.*).  Dr. Miro, at many points in her evaluation, explicitly mentioned that her opinion was based on her observations and clinical findings.  (R. 589).  Dr. Miro diagnosed Plaintiff with Major Depressive Disorder, Recurrent, Severe Without Psychotic Features, and Generalized Anxiety Disorder.  (R. 589).  She explained that "[o]verall clinical findings evidenced impairment in social functioning."  *Id.*  The ALJ's selective use of evidence does not constitute substantial evidence.

Critically, the ALJ concludes that Dr. Miro's opinion is inconsistent with the overall medical evidence of record; however, the ALJ cites to no medical evidence of record outside of Dr. Miro's own evaluation to support this finding.  Such a blanket assertion without evidentiary support is not substantial evidence in support of the ALJ's finding.

Considering the foregoing, the ALJ's conclusion that Dr. Miro's opinion is not persuasive is not supported by substantial evidence.  Accordingly, I recommend remand for a more thorough reconsideration of Dr. Miro's opinion.

    *iv.  The ALJ's Findings Regarding Plaintiff's Limitations in Interacting with Supervisors*

Plaintiff argues that the ALJ's finding that Plaintiff is "limited to occasional interaction with co-workers and the general public on routine matters," (R. 19–20), conflicts with another ALJ finding that Plaintiff "is able to respond appropriately to supervision."  (R. 20).  Defendant argues that although the ALJ did not specifically explain the limitations relating to interacting with

supervisors, the ALJ properly considered that Plaintiff had moderate limitations in the broad functional area of interacting with others.  (R. 19).

Plaintiff further argues that the ALJ's conclusion is inconsistent with the findings of the State Agency psychological consultants, both of whose opinions the ALJ found persuasive.  The State Agency psychological consultants found that Plaintiff was limited to a "work environment with only brief interactions with others," which Plaintiff argues also includes supervisors.  (R. 75, 90).

However, Defendant contends the ALJ was not required to adopt verbatim the findings of the State Agency psychological consultants even if they were found to be persuasive.  *Misla v. Comm'r of Soc. Sec.*, No: 6:20-cv-1076-DCI, 2021 WL 2417084, at *2 (M.D. Fla. June 14, 2021) ("[A]n ALJ need not adopt every part of an opinion that the ALJ finds persuasive.").  Defendant argues that the ALJ's finding that Plaintiff was able to respond appropriately to supervisors is supported by substantial evidence.  For example, Defendant avers that at his consultative examination, Plaintiff was fully cooperative with fair social judgment.  (R. 19, 586, 588).  During his treatment before Dr. Castro, Plaintiff was polite with appropriate eye contact (R. 19, 594, 596, 598, 600, 602, 604, 617, 619, 621, 623, 625), and at the hearing before the ALJ, Plaintiff interacted appropriately with the hearing office personnel.  (R. 19).

In reply, Plaintiff takes issue with Defendant's post hoc rationalization by pointing out that the ALJ does not cite to any of the aforementioned evidence or provide an explanation for not including a limitation as to Plaintiff's ability to respond to supervision, and yet Defendant presents the argument above.  *See Baker v. Comm'r of Soc. Sec.*, 348 F. App'x 893, 896 (11th Cir. June 23, 2010) ("a court may not accept appellate counsel's post hoc rationalizations for agency actions" and "[i]f an action is to be upheld, it must be upheld on the same bases articulated in the agency's

order.") (citing *FPC v. Texaco Inc.*, 417 U.S. 380, 397 (1974)).  The ALJ did not provide any direct support for the limitation or this post hoc rationalization.  Thus, Defendant's argument does not constitute substantial evidence in support of the ALJ's findings.

In *Sharpe v. Comm'r, Soc. Sec. Admin.*, No. 20-14350, 2022 WL 152229, at *4 (11th Cir. Jan. 18, 2022), the Eleventh Circuit found that the ALJ's findings were supported by an insufficient explanation regarding the claimant's limitations and ability to interact with others.  In that case, the Eleventh Circuit found that the Defendant's reliance on two pieces of evidence that were not relied on by the ALJ could not be considered by the court, even when provided with an explanation for the evidentiary distinction.  Here, the ALJ provided *no* explanation at all as to the distinction between the two limitations and did not make any arguments in support of the finding that Plaintiff is able to respond appropriately to supervision.

Accordingly, the undersigned finds that the ALJ's findings as to Plaintiff's limitations in his ability to respond appropriately to supervision are not based on substantial evidence.  I recommend a remand for reconsideration of Plaintiff's mental limitations as part of his RFC assessment.

### b.  Crediting Plaintiff's Testimony

Plaintiff argues that substantial evidence does not support the ALJ's findings that Plaintiff's statements regarding the persistence, severity, and limiting effects of Plaintiff's impairments and alleged symptoms are inconsistent with the medical evidence and other evidence of record.  (R. 22).  In response, Defendant argues that the medical evidence of record, considered as a whole, is substantial evidence for discrediting Plaintiff's subjective complaints.

"If the ALJ decides not to credit a claimant's testimony as to her pain, he must articulate explicit and adequate reasons for doing so."  *Foote*, 67 F.3d at 1561–62.  If such reasons are not

given, then the claimant's subjective pain testimony must be accepted as true. *Id.* at 1562 (citing *Cannon v. Bowen*, 858 F.2d 1541, 1545 (11th Cir. 1988)). However, "[a] clearly articulated credibility finding with substantial supporting evidence in the record will not be disturbed by a reviewing court." *Id.*

Here, the ALJ found that: (1) Plaintiff's testimony and statements "are inconsistent with the substantial evidence of record," noting that the record showed that "treatment and medication have been generally successful in controlling the claimant's symptoms;" and (2) "the claimant has described daily activities, which are not as limited as one would expect, given the complaints of disabling symptoms and limitations." (R. 22–23).

First, the ALJ found that the medical record showed that treatment and medication were generally successful in controlling Plaintiff's symptoms and that Plaintiff's follow-up mental status examinations from Dr. Castro were generally within normal limits. (R. 22, 592–608, 616–26). The ALJ further found that Plaintiff "reported overall improved mood with treatment and medication." (R. 22).

However, the ALJ's findings overlook the entire medical evidence in the record in reaching these conclusions. Dr. Castro's treatment notes document Plaintiff's condition as continuing to wax and wane, in addition to Plaintiff continuing to display significant symptoms of anxiety, depression, and hypomania. As noted above in Section IV(a)(ii), Dr. Castro's April 1, 2019 letter stated that Plaintiff remained at an increased risk for experiencing "sudden moments of irritability, panic attacks, extreme fatigue, poor concentration, and emotional sensitivity." (R. 611).

In *Simon v. Comm'r, Soc. Sec. Admin.*, 7 F.4th 1094, 1108 (11th Cir. 2021), the Eleventh Circuit rejected the argument that occasional references to a claimant being stable on medication were inconsistent with a finding of debilitating illness. While Plaintiff's treatment records do show

that Plaintiff displayed pleasant and cooperative behavior, intact eye contact, good attention, concentration, intact memory, and other positive behavior, Dr. Castro ultimately concluded that Plaintiff's symptoms significantly interfered with his ability to work and that "[p]rematurely returning to work [would] jeopardize Mr. Jimenez's progress and unnecessarily prolong his recovery." (R. 611). In response, Defendant argues that *Simon* is distinguishable from this case because the ALJ in that case dismissed the claimant's treatment notes because some of the mental status examinations presented better results than others, whereas Defendant contends that in this case the ALJ considered all of Plaintiff's treatment notes in making the findings. As examined above in Section IV(a), the ALJ's findings did not consider all of Plaintiff's medical evidence of record in the RFC assessment.

Accordingly, the ALJ's finding that Plaintiff's statements of disabling limitations were not fully consistent with the medical evidence of record is not supported by substantial evidence.

Second, the ALJ found that Plaintiff's ability to carry out certain daily activities "[is] not limited to the extent one would expect, given the complaints of disabling symptoms and limitations." (R. 22). Plaintiff argues that being "independent in his self-care, including bathing, dressing, grooming, and eating" does not undermine his disability claim.

In *Simon*, the Eleventh Circuit found that a claimant feeding herself, dressing, and shopping was not significant and truly indicative of an inconsistency that would undermine a claimant's disability claim. 7 F.4th at 1108. In that case the court noted the following:

> [T]he ALJ failed to identify any genuine inconsistency with Dr. Turner's findings. In our view, it goes almost without saying that many people living with severe mental illness are still capable of eating, putting on clothes in the morning, and purchasing basic necessities. None of those activities, however, say much about whether a person can function in a work environment—with all of its pressures and obligations—on a sustained basis.

*Id.* at 1108.  Here, the ALJ also found that Plaintiff helped his wife at home by cleaning, organizing drawers, and doing laundry.  The ALJ also recognized that Plaintiff was able to care for his pet.

To the extent that the ALJ relied upon the record evidence and Plaintiff's testimony that he could take care of his personal needs and daily activities, this does not constitute good cause to discredit the record as a whole and Plaintiff's testimony.  The ALJ failed to consider other aspects of Plaintiff's testimony and record evidence.  For example, Dr. Miro noted that Plaintiff reported that he stays home most of the time, experiences anxiety and impatience, and denies going to the supermarket for grocery shopping.  (R. 589).  Plaintiff testified at the hearing before the ALJ that on a typical day his father brings him coffee and he remains in bed.  On some occasions, Plaintiff goes to the yard with his father and plays with his dog, but then retreats back to his bed.  (R. 40, 47, 48).  Plaintiff further testified that he spends most of the day in bed, his wife gets him out of bed around seven or eight o'clock in the evening, and that he enjoys being alone.  (R. 46, 47, 49, 50).  Plaintiff no longer uses his boat and is unable to have Bible study because his "mind goes all over the place."  (R. 50).

The ALJ also overlooks other evidence provided by Plaintiff, including the activities in his Function Report, which indicate that Plaintiff skips days of bathing, eats once a day, only leaves his residence to see the doctor and therapist, and has trouble talking and getting along.  (R. 294, 295, 297, 298).

Defendant argues that Plaintiff is seeking to have this Court reweigh the evidence or substitute the undersigned's judgment for that of the Commissioner.  Defendant further avers that the evidence Plaintiff cites is not persuasive and that the ALJ was not required to accept Plaintiff's statements over other evidence since the ALJ is "responsible for resolving any inconsistencies." (ECF No. 29 at 16).

As mentioned above, "[i]f the ALJ decides not to credit a claimant's testimony as to her pain, he must articulate explicit and adequate reasons for doing so." *Foot*, 67 F.3d at 1561–62. Plaintiff does not request that this Court reweigh the evidence. Here, the ALJ merely points to evidence that Plaintiff can carry out certain activities independently and that Plaintiff's treatment and medication have been generally successful in controlling his symptoms. These general observations are not adequate reasons to discredit Plaintiff's testimony in light of the medical evidence and other evidence of record. Accordingly, the ALJ's finding that Plaintiff's testimony is not credible is not supported by substantial evidence, and a remand is warranted.

### c. Substantial Evidence Does Not Support the ALJ's Finding that Plaintiff Could Adjust to Other Work (Step Five)

Finally, Plaintiff challenges the ALJ's conclusion at step five that Plaintiff was capable of performing other work that exists in substantial numbers in the economy based on the VE's testimony. However, the Court need not evaluate Plaintiff's argument as to the step five finding because the undersigned recommends remanding this case in order to address the deficiencies in step four of the analysis as explained in the preceding sections.

Here, the ALJ provided the limitations of Plaintiff's RFC to a VE, and the VE identified unskilled jobs that Plaintiff could perform, including jobs as a hand packager and kitchen helper (R. 20, 25, 56-59). Because the Court finds in the prior sections above that the ALJ's RFC finding is not supported by substantial evidence, the VE's testimony is unable to provide support for the ALJ's decision that Plaintiff is not disabled.

It is well settled in the Eleventh Circuit that the ALJ must pose a hypothetical question to the vocational witness expert which comprehensively describes the claimant's impairments. *See Pendley v. Heckler*, 767 F.2d 1561, 1563 (11th Cir. 1985). By providing the VE with a

hypothetical that includes an RFC that does not accurately account for and comprehensively describe the Plaintiff's impairments, the VE's testimony is also not supported by substantial evidence.

Accordingly, and before the VE provides testimony at step five as to whether Plaintiff is capable of engaging in other work, it is appropriate to remand for reconsideration of Plaintiff's RFC at step four of the analysis, then determine whether it is necessary to proceed to step five.

## V.   RECOMMENDATION

Accordingly, the undersigned respectfully **RECOMMENDS** that Plaintiff Raul Jimenez's Motion (ECF No. 24) be **GRANTED** and that Defendant's Motion (ECF No. 29) be **DENIED**, and that the ALJ's decision be **REVERSED** and **REMANDED** with instructions to reanalyze steps four and five of the Social Security Administration five-step inquiry.

A party shall serve and file written objections, if any, to this Report and Recommendation with the Honorable K. Michael Moore, United States District Court Judge for the Southern District of Florida, within **FOURTEEN (14) DAYS** of being served with a copy of this Report and Recommendation.  Failure to timely file objections will bar a *de novo* determination by the District Judge of anything in this recommendation and shall constitute a waiver of a party's "right to challenge on appeal the district court's order based on unobjected-to factual and legal conclusions." 11th Cir. R. 3-1 (2016); 28 U.S.C. § 636(b)(1)(C); *see also Harrigan v. Metro-Dade Police Dep't Station #4*, 977 F.3d 1185, 1191–92 (11th Cir. 2020).

**RESPECTFULLY SUBMITTED** in Chambers, in Miami, Florida this 14th day of September, 2022.

LAUREN FLEISCHER LOUIS
UNITED STATES MAGISTRATE JUDGE